No. 26-_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

IN RE SHERROD BROWN, JON OSSOFF, ROY COOPER, AND KRISTEN MCDONALD RIVET,

*Petitioners.*

# PETITION FOR WRIT OF MANDAMUS TO THE FEDERAL COMMUNICATIONS COMMISSION


David R. Fox
Richard A. Medina
Nicole E. Wittstein
Julianna D. Astarita
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
dfox@elias.law
rmedina@elias.law
nwittstein@elias.law
jastarita@elias.law

*Counsel for Petitioners Sherrod Brown, Jon Ossoff, Roy Cooper, and Kristen McDonald Rivet*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 2

RELIEF SOUGHT ........ 3

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 3

I. Statutory and Regulatory Framework ........ 3

   A. The Communications Act requires broadcasters to charge candidates "lowest unit charge" for advertising before elections. ........ 3

   B. The Commission's Media Bureau enforces the LUC requirement through authority delegated by the Commission. ........ 6

II. Procedural Background ........ 7

   A. The Commission's Media Bureau announces a new rule requiring broadcasters to provide lowest unit charge for party-coordinated and JFC advertising. ........ 7

   B. Petitioners seek expedited agency review. ........ 8

   C. Petitioners seek expedited review of the Public Notice in this Court, and the Commission reveals it has internally decided to dismiss the Application for Review. ........ 10

   D. The Supreme Court stays this Court's judgment, inflicting the irreparable harm that this Court had sought to avoid. ........ 12

ARGUMENT ........ 13

I. Only mandamus relief can ensure the Commission complies with its nondiscretionary duty to decide Petitioners' Application for Review. ........ 14

II. Withholding a final order on a decision the Commission has already made constitutes egregious delay. ........ 16

CONCLUSION ........ 21

CERTIFICATE OF COMPLIANCE ........ 22

CERTIFICATE OF SERVICE ........ 23

STATUTORY ADDENDUM ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bost v. Ill. State Bd. of Elections*,
607 U.S. 71 (2026)....................20

*Brown v. FCC*,
No. 26-1785, 2026 WL 2493115 (4th Cir. Aug. 25, 2026).......... *passim*

*Bufkin v. Collins*,
604 U.S. 369 (2025)....................15

*Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*,
816 F.3d 48 (4th Cir. 2016)....................13

*Gonzalez v. Cuccinelli*,
985 F.3d 357 (4th Cir. 2021).................... 18, 19

*Hernstadt v. FCC*,
677 F.2d 893 (D.C. Cir. 1980)....................4

*In re Pub. Emps. for Env't Resp.*,
957 F.3d 267 (D.C. Cir. 2020)....................2

*Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*,
426 U.S. 394 (1976)....................13

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....................17

*Lovitky v. Trump*,
949 F.3d 753 (D.C. Cir. 2020)....................15

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)....................15

*NRSC v. FEC*,
146 S. Ct. 2404 (2026)....................5, 7

*Randall v. Sorrell*,
548 U.S. 230 (2006) .......... 20

*South Carolina v. United States*,
907 F.3d 742 (4th Cir. 2018) .......... 13

*Telecomm. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) .......... 2, 15, 19, 20

**STATUTES**

5 U.S.C. § 706 .......... 13

28 U.S.C. § 1651 .......... 2

28 U.S.C. § 2343 .......... 2

47 U.S.C. § 155 .......... *passim*

47 U.S.C. § 315 .......... *passim*

47 U.S.C. § 402 .......... 2, 15

52 U.S.C. § 30102 .......... 4, 5

52 U.S.C. § 30116 .......... 4, 5

**Regulations**

11 C.F.R. § 102.17 .......... 5

47 C.F.R. § 0.61 .......... 6

## INTRODUCTION

Two weeks ago, this Court held in *Brown v. FCC* that the Federal Communications Commission's Media Bureau violated the Communications Act when it issued a Public Notice on March 30, 2026, that instructed broadcasters to offer "lowest unit charge" advertising rates to political parties and joint fundraising committees, because the Act reserves those rates for candidates only. *Brown v. FCC* ("*Brown I*"), No. 26-1785, 2026 WL 2493115 (4th Cir. Aug. 25, 2026), *stay granted sub nom. NRCC v. Brown*, No. 26A274, 2026 WL 2618462 (U.S. Sep. 4, 2026) (per curiam). On Friday, the Supreme Court stayed that decision on procedural grounds only, ruling that the Court likely lacks jurisdiction to review the Public Notice while Petitioners' Application for Review of the Public Notice remains pending before the FCC. *See NRCC*, 2026 WL 2618462. In doing so, however, the Supreme Court did not question *Brown I*'s merits conclusion that the Public Notice is unlawful, and it recognized that the Public Notice is not an ordinary economic regulation, but rather one that implicates "efforts to reach the electorate in the critical weeks leading up to the midterms." *Id.* at *2.

Petitioners—the four candidates from *Brown I*—bring this mandamus petition to address the Supreme Court's jurisdictional concern and enable a decisive ruling on the validity of the Public Notice before it is too late to matter. There is no legitimate justification for the Commission's delay in adjudicating Petitioners'

Application for Review, which was filed more than four months ago. The Commission told the Court weeks ago that it planned to deny it and that a proposed order doing so was circulating, and it has defended the underlying Public Notice on the merits in this Court and in the Supreme Court. If it does not wish to issue a reasoned order, it does not need to do so. *See* 47 U.S.C. § 155(c)(5). But the Court should compel it to issue some order, rather than sitting on Petitioners' Application and barring judicial review in advance of the November election.

The Court should therefore grant this Petition and order the Commission to decide Petitioners' Application for Review by no later than September 18, 2026.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651, to review unreasonable delay of agency action "whenever a statute commits review of the relevant action to the courts of appeals." *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 271 (D.C. Cir. 2020). Because Section 402(a) of the Communications Act of 1934 commits review of the Commission's orders to the courts of appeals, this Court has jurisdiction to compel the Commission to issue a final order on Petitioners' Application for Review. 47 U.S.C. § 402(a); *see also Telecomm. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 75–77 (D.C. Cir. 1984). Venue is appropriate in this Court because Petitioner Governor Roy Cooper resides in North Carolina. 28 U.S.C. § 2343.

## RELIEF SOUGHT

Petitioners seek an order granting this Petition and instructing the Commission to issue a decision on Petitioners' Application for Review by Friday, September 18. Petitioners also ask this Court to retain jurisdiction over the matter solely to ensure the Commission's compliance with the Court's order.

## STATEMENT OF THE ISSUES

Whether this Court should issue a writ of mandamus compelling the Commission to comply with its express statutory obligation to decide all applications for review of actions taken pursuant to delegated authority by issuing a final order denying Petitioners' Application for Review of the Media Bureau's Public Notice, which the agency has already decided to deny, and which may be denied "without specifying any reasons therefor," 47 U.S.C. § 155(c)(5).

## STATEMENT OF THE CASE

### I. Statutory and Regulatory Framework

#### A. The Communications Act requires broadcasters to charge candidates "lowest unit charge" for advertising before elections.

Section 315(b)(1) of the Communications Act of 1934 entitles "legally qualified candidate[s] for any public office" who "use . . . any broadcasting station" shortly before their elections to do so at "the lowest unit charge of the station for the same class and amount of time for the same period." 47 U.S.C. § 315(b)(1) ("the LUC requirement"). This valuable entitlement takes effect 45 days before the

candidate's primary election and 60 days before the general election. *Id.* § 315(b)(1)(A). Its present text was enacted as part of the Federal Election Campaign Act of 1971 (FECA), which comprehensively regulates federal campaign finances. *See Hernstadt v. FCC*, 677 F.2d 893, 897 (D.C. Cir. 1980).

FECA requires all federal candidates to designate a "principal campaign committee" to accept contributions and make expenditures on the candidate's behalf. 52 U.S.C. § 30102(e)(1). Everyone agrees that stations must offer lowest unit charge for advertisements purchased by those principal campaign committees on behalf of the "legally qualified candidate" they support. This Petition concerns whether stations must *also* offer lowest unit charge to advertisements purchased by two other categories of committees that are further removed from the candidates themselves: party committees engaged in coordinated expenditures under 52 U.S.C. § 30116(d), and joint fundraising committees established by candidates and non-candidates "solely for the purpose of joint fundraising," *id.* § 30102(e)(3)(A)(ii).

**Party Committee Coordinated Expenditures.** FECA sharply limits the size of "contributions" that may be made to federal political committees, including candidate committees. *See* 52 U.S.C. § 30116(a). To prevent donors from evading those limits by directly paying vendors on a candidate's behalf, FECA generally treats as contributions, subject to those same limits, expenditures that are "made by any person in cooperation, consultation, or concert, with, or at the request or

suggestion of, a candidate, his authorized political committees, or their agents." *Id.* § 30116(a)(7)(B)(i). But as the Supreme Court held a few months ago, political party committees are constitutionally entitled to make unlimited "coordinated" expenditures, which, the Court explained, "are the party's expenditures on, for example, advertisements produced or distributed in consultation with a candidate's campaign." *NRSC v. FEC*, 146 S. Ct. 2404, 2413 (2026).

**Joint Fundraising Committees.** In addition to establishing a principal campaign committee, FECA allows federal candidates to "designate a political committee established solely for the purpose of joint fundraising by such candidates as an [additional] authorized committee." 52 U.S.C. § 30102(e)(3)(A)(ii); 11 C.F.R. § 102.17(a)(1)–(2). Such committees are known as "joint fundraising committees" or "JFCs." A JFC's only permissible purpose is to "collect contributions, pay fundraising costs from gross proceeds and from funds advanced by participants, and disburse net proceeds to each participant." 11 C.F.R. § 102.17(b)(1); *see* 52 U.S.C. § 30102(e)(3)(A)(ii). FEC regulations require JFC participants to split expenses for fundraising in proportion to their share of the proceeds. 11 C.F.R. § 102.17(c)(7).

In recent election cycles, Republican candidates have formed JFCs with non-candidate committees as advertising vehicles. These JFCs are structured to ensure that an overwhelming majority of their proceeds flow to non-candidate committee members, so that the non-candidate committees bear the overwhelming majority of

expenses as well.[1] They have then demanded lowest unit charge from broadcasters for advertising that is overwhelmingly funded by non-candidates.

### B. The Commission's Media Bureau enforces the LUC requirement through authority delegated by the Commission.

The Commission's organic statute authorizes the agency to "organize its staff into . . . integrated bureaus" and "delegate any of its functions" accordingly. 47 U.S.C. § 155(b), (c)(1). "Any order, decision, report, or action made or taken pursuant to any such delegation" has "the same force and effect" as a Commission order, "unless reviewed" by the full Commission. *Id.* § 155(c)(3). The FCC Media Bureau's delegated authority over broadcast media includes "[a]dminister[ing] and enforc[ing] rules and policies regarding political programming," such as the LUC requirement. 47 C.F.R. § 0.61(e). A party aggrieved by one of the Commission's integrated bureaus, like the Media Bureau, must "file an application for review by the Commission" before seeking judicial review. 47 U.S.C. § 155(c)(4), (7). And Congress required that "every such application shall be passed upon by the Commission." *Id.* § 155(c)(4).

[1] *See, e.g.*, *Nevada Victory Committee*, FEC, https://www.fec.gov/data/committee/C00890962/ (last visited Sep. 8, 2026); *Wisconsin Victory Committee*, FEC, https://www.fec.gov/data/committee/C00889493/ (last visited Sept. 8, 2026).

## II. Procedural Background

### A. The Commission's Media Bureau announces a new rule requiring broadcasters to provide lowest unit charge for party-coordinated and JFC advertising.

The lowest unit charge requirement has existed for decades, but before the Public Notice, the Commission had never provided public guidance on whether party committees engaged in candidate-coordinated spending or JFCs with non-candidate members are entitled to lowest unit charge. The Government, however, did take a position last year, when the Republican Party's national senatorial and congressional committees sought to invalidate FECA's cap on party-coordinated expenditures—including broadcast advertisements. Responding to concerns that eliminating unlimited coordinated expenditures "threaten[ed] to destabilize the lowest-rate-charge system for political advertising," Brief for Intervenor-Resp'ts at 46–48, *NRSC v. FEC*, No. 24-621 (U.S. filed Sep. 29, 2025), the Solicitor General responded that lowest unit charge rules "require broadcasters to charge low rates for candidate spending, but not for party spending—whether coordinated or independent." Reply Br. of Fed. Resp'ts at 23, *NRSC*, No. 24-621 (U.S. filed Oct. 29, 2025) (citing 47 U.S.C. § 315(b)(1)). Even if the Court allowed unlimited coordinated spending, the Solicitor General explained, "broadcasters still would not be required to charge parties special low rates." *Id.* Citing the Solicitor General's statement, the National Association of Broadcasters then advised its broadcaster

members that they need not offer lowest unit charge for party-coordinated and JFC ads. Add. 30–32.

On March 30, 2026, after NAB advised its members they need not offer lowest unit charge to party committees and JFCs, the Commission's Media Bureau issued a Public Notice directing broadcasters to do just that. The Public Notice requires broadcasters to offer lowest unit charge to "(1) authorized committees that engage in joint fundraising with legally qualified candidates for federal office, and (2) [for] advertisements that qualify as coordinated expenditures of political parties and legally qualified candidates for federal office." Add. 27. It purports to "restate previous Media Bureau guidance"—which it neither cites nor otherwise identifies—that "candidate-party coordinated advertisements are subject to the LUC provisions, provided that the ad otherwise complies with other applicable requirements." *Id.* Both the Media Bureau and the Commission have since confirmed that the only past "guidance" on this score consists of "informal oral opinions" conveyed to broadcasters by telephone. Add. 37 n.18; *see also* Br. for Resp'ts at 39 n.10, *Brown I*, No. 26-1785 (4th Cir. July 20, 2026), Dkt. 49.

**B. Petitioners seek expedited agency review.**

On April 29, 2026, Petitioners Senator Sherrod Brown, Senator Jon Ossoff, Governor Roy Cooper, and Representative Kristen McDonald Rivet—four Democratic candidates in hotly contested races in the upcoming general election—

timely filed an Application for Review asking the Commission to set aside the Public Notice. Add. 1–32. On the same day, the Television Bureau of Advertising, Inc. ("TVB"), filed a separate petition for reconsideration before the Media Bureau. *See* Add. 35, 44–71. Petitioners' Application explained that the Public Notice is unlawful because it purports to require stations to offer lowest unit charge for advertisements that do not constitute candidate use, in violation of Section 315(b)(1)'s plain text. Petitioners twice requested expedited relief due to the imminent harm they faced from the Public Notice's unlawful expansion of lowest unit charge to non-candidate advertising. Add. 4, 19. But the Commission did nothing.

Meanwhile, Republican Party committees supporting Petitioners' opponents were promising to unleash exactly the deluge of party-funded, candidate-rate advertising that the Solicitor General had previously promised would *not* result from *NRSC*. The RNC touted in an interview that Republican Party committees stand ready to spend *hundreds of millions* of dollars on coordinated TV advertising "at the candidate rate" to "obliterate" Democratic candidates this election.[2]

[2] Matthew Foldi, *INTERVIEW: RNC Chair Joe Gruters on the RNC's Election Integrity Wins and How the GOP Can Defy History in 2026*, Wash. Rep. (June 23, 2026), https://perma.cc/9F8G-UZUR.

### C. Petitioners seek expedited review of the Public Notice in this Court, and the Commission reveals it has internally decided to dismiss the Application for Review.

Facing imminent, irreparable harm, Petitioners filed a Petition for Review of the Public Notice in this Court on June 19, 2026. The Court expedited the appeal to enable a decision before lowest unit charge became available on September 4 in advance of the general election. The Republican Party's national senate and congressional committees intervened as respondents, and they and the Commission objected to the Court's jurisdiction while simultaneously defending the Public Notice on the merits, with the Commission contending that it "is entirely consistent with Section 315(b)" of the Communications Act. Br. for Resp'ts at 36, *Brown I*, No. 26-1785 (4th Cir. July 20, 2026), Dkt. 49.

The Court heard oral argument at a special sitting on August 7, 2026. By then, the Candidates' Application for Review had been pending before the Commission for more than three months. But when pressed by the panel, the Commission's counsel admitted with "commendable candor" that "it [was] very unlikely that the Commission [would] act" on the Application before lowest unit charge became available on September 4, *Brown I*, 2026 WL 2493115, at *6 (quoting Oral Arg. at 49:49–50:12)—even though the Commission had already authorized the filing of a brief rejecting the legal basis for Petitioners' Application on the merits, and even

though the Commission would have been entitled to deny the Application "without specifying any reasons therefor," 47 U.S.C. § 155(c)(5).

Just ten days later, however—after an oral argument at which a panel majority seemed inclined to grant relief—the Commission changed course. It filed a notice of supplemental authority informing the Court that (1) the Media Bureau had issued an order denying the TVB's petition for reconsideration of the Public Notice; and (2) "the FCC Chairman circulated a proposed order" on Petitioners' Application for Review "dismiss[ing] the application as an improper vehicle" to review the Public Notice in the first place. Add. 33. Consistent with this notice, Commissioner Anna M. Gomez later published a dissent to the Media Bureau's order. Add. 41–43. In a related public statement announcing the Commission's action, cautioned that the "FCC is unleashing a flood of coordinated campaign money into broadcast advertising," "forc[ing] [broadcasters] into a fire sale on the one thing that could actually help them compete and increase revenue," and she argued that the Commission had done so through irregular procedures "with no opportunity for the public to weigh in." Add. 39.

On August 25, 2026, this Court ruled for Petitioners and set aside the Public Notice. The Court found that the "unusual circumstances" of the case supported finding the Commission had constructively denied Petitioners' Application for Review, thereby conferring jurisdiction to review the Public Notice. *Brown I*, 2026

WL 2493115, at *6. It thus expressly declined to "wade into the parties' dispute as to whether the only statutory precondition to filing the Petition for Review was first filing the Application for FCC Review," or whether judicial review is available "only after the Commission has ruled on the Application." *Id.* at *6 n.8. On the merits, the Court rightly found that the Public Notice conflicted with the plain text of the Communications Act by extending the valuable entitlement to lowest unit charge that Congress reserved for federal *candidates* to non-candidate political committees, including party committees and JFCs.

**D. The Supreme Court stays this Court's judgment, inflicting the irreparable harm that this Court had sought to avoid.**

Shortly after the Court ruled, the intervening party committees sought an emergency stay pending certiorari in the U.S. Supreme Court. They complained that "broadcast stations [were] already rescinding [LUC] rates" in light of this Court's decision vacating the Public Notice. Emergency Appl. for Stay at 1, *NRCC*, No. 26A274 (U.S. filed Aug. 28, 2026), 2026 WL 2584468. In so doing, they effectively confirmed this Court's finding that the Public Notice is, "in both substance and operation," a "substantive" or "legislative rule" that "[left] broadcasters with 'no choice but to comply' with its unlawful expansion of the LUC statute" until the Court set those new requirements aside. *Brown I*, 2026 WL 2493115, at *7 (citation omitted).

On September 4, 2026—the first day that lowest unit charge became available for the upcoming general election—the Supreme Court granted the Republican committees' stay application on procedural grounds. In a *per curiam* opinion, the Supreme Court held that this Court "likely lacked statutory jurisdiction to address [Petitioners'] challenge" because the "application for review was pending when [Petitioners] filed their petition for review." *NRCC*, 2026 WL 2618462, at *2. The Supreme Court further held that the intervenor party committees faced irreparable harm if they were required to pay ordinary rates for their advertisements. *Id.*. The Supreme Court did not address whether the Public Notice is substantively lawful.

**ARGUMENT**

The Commission's handling of Petitioners' Application for Review, coupled with the exigencies of the impending election, justifies prompt mandamus relief. The Administrative Procedure Act authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Mandamus relief requires showing that, (1) there is "'no other adequate means to attain the relief' sought," *South Carolina v. United States*, 907 F.3d 742, 754 (4th Cir. 2018) (quoting *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)); (2) that the petitioner has a "clear and indisputable right to the relief sought," and specifically that "the responding party has a clear duty to do the specific act requested," *id.*

(quoting *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016)); and (3) granting the writ is a sound "exercise [of] equitable discretion," *id.*

Each factor is satisfied here. Mandamus is urgently needed to prevent ongoing statutory violations and irreparable harm that the Court already recognized in *Brown I*. The Court should direct the Commission to publish its already-written decision dismissing Petitioners' Application for Review by September 18, to allow Petitioners to obtain judicial review of a *de facto* legislative rule that this Court has already held violates federal law.

## I. Only mandamus relief can ensure the Commission complies with its nondiscretionary duty to decide Petitioners' Application for Review.

Petitioners readily satisfy the first two requirements for mandamus relief. *See Brown I*, 2026 WL 2493115, at *20 (Wilkinson, J., dissenting) (recognizing the court would "ha[ve] jurisdiction under the All Writs Act to issue a writ of mandamus compelling the agency to render its final decision"). Petitioners have no other option besides mandamus to compel the Commission to perform its mandatory duty to issue a final decision on Petitioners' Application for Review, without which the Supreme Court stay has now precluded effective relief from the Public Notice.

**A.** In light of the Supreme Court's ruling staying this Court's prior decision, mandamus is the only remedy available to Petitioners. The Commission has refused to issue an order on Petitioners' Application for Review for more than four months, despite Petitioners' request for expedition and the Commission's having already

decided to defend the challenged agency action on the merits. While Petitioners continue to maintain that the Communications Act does not require them to wait for a Commission order on their Application for Review before seeking judicial review, the Supreme Court's stay order forecloses that option. And because the Commission's final orders fall within this Court's exclusive jurisdiction, 47 U.S.C. § 402(a), an unlawful-delay claim under the APA in federal district court is not available. *See TRAC*, 750 F.2d at 79–80. All that remains is mandamus.

**B.** Petitioners have a "clear right to relief" because the Communications Act imposes upon the Commission a "clear duty to act" on the Application for Review. *Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (explaining that these elements are "often" addressed "concurrently"). Agency inaction is eligible for mandamus relief when the agency has "failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Here, Congress unmistakably imposed upon the Commission a nondiscretionary duty to decide all applications for review of any action taken pursuant to delegated authority. The Communications Act provides that "every such application [for review] *shall be passed upon* by the Commission." 47 U.S.C. § 155(c)(4) (emphasis added). "The use of 'shall' in the statute indicates a mandatory duty that must be undertaken." *Brown I*, 2026 WL 2493115, at *20 (Wilkinson, J., dissenting) (citing *Bufkin v.*

*Collins*, 604 U.S. 369, 379 (2025)). The Commission therefore cannot simply "table an application indefinitely" without "violating the law." *Id.*

## II. Withholding a final order on a decision the Commission has already made constitutes egregious delay.

The circumstances here cry out for the Court to exercise its discretion to grant mandamus relief requiring the Commission to issue its final decision on Petitioners' Application for Review. To be sure, mandamus often requires a longer delay than has occurred in this case. *See Brown I*, 2026 WL 2493115, at *13 n.1 (Wynn, J., concurring); *id.* at *20 (Wilkinson, J., dissenting). But "courts may calibrate their discretion to issue the writ and act more aggressively when the circumstances warrant it." *Id.* at *20 (Wilkinson, J., dissenting). This Court has already found that the "unusual circumstances" here constituted constructive denial of Petitioners' Application for Review—specifically, that the Commission has already authored its final decision, and the agency would otherwise inflict irreparable harm on Petitioners while evading judicial review. *Id.* at *6 (majority opinion); *id.* at *13–14 (Wynn, J., concurring). The Supreme Court then held, in granting a stay, that the Communications Act likely precluded that form of relief. But the Supreme Court's order does not question this Court's conclusions that the Commission has unreasonably delayed, that Petitioners face irreparable harm without immediate judicial review, or that the underlying agency action is unlawful. Those

considerations support granting mandamus relief here, to enable review despite the jurisdictional limitation that is the basis for the Supreme Court's stay.

The Commission has already done the substantive work on Petitioners' Application. It opted to defend the challenged agency action on the merits in *Brown I.* And the Commission informed this Court weeks ago that "on August 14, the FCC Chairman circulated a proposed order on [Petitioners'] application for Commission review." Add. 33. The order will not "explain[] . . . the Commissioners' views" on the "intricate questions of campaign finance law" raised in Petitioners' Application. *Brown I*, 2026 WL 2493115, at *21 (Wilkinson, J., dissenting). Instead, the Commission has stated categorically that it will not consider the issues in the Application at all, and it plans to "dismiss the . . . application as an 'improper vehicle'" to review the Media Bureau's new rule "on the eve of an election." *Id.* at *3 (majority opinion) (citation omitted). In any event, the Commission has no legal obligation to explain or justify its views on the merits—it may deny the application "without specifying any reasons therefor." 47 U.S.C. § 155(c)(5). And whether the Commission explains itself or not, this Court's review of Petitioners' argument that the challenged action violates the Communications Act will be *de novo* review of a pure question of statutory construction. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 398–99 (2024).

For those reasons, this is not a garden-variety case of agency delay, where an agency's "resource constraints and competing priorities" frequently counsel against judicial intervention before the passage of time alone renders the agency's delay egregious. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021); *see Brown I*, 2026 WL 2493115, at *20 (Wilkinson, J., dissenting) ("[J]udges are not in a strong position to question the agency's relative priorities or to formulate a view of how long disposing of any given application 'should' take."). The Commission has made its decision—it simply must publish the order. And there is no reason to doubt that the Chairman's proposed order, about which the Court was notified weeks ago, carried the vote. The lone dissent of the three commissioners, Commissioner Gomez, published "an unofficial announcement of [the] Commission['s] action," criticizing "this FCC [for] unleashing a flood of coordinated campaign money into broadcast advertising." Add. 39. And she likewise published a dissent to the Public Notice. Add. 41–43.

Further delay by the Commission will accomplish nothing beyond evading the judicial review it knows will follow. *See* Pet'rs Resp. to Letter of Suppl. Authorities at 2, *Brown I*, No. 26-1785 (4th Cir. Aug. 19, 2026), Dkt. 65 (stating Petitioners will file a second Petition for Review after the Commission's final order issues). Allowing this "dangerous" tactic to continue would allow the Commission to "use its delegated authority as a get-out-of-review-free card," where the Media

Bureau's "broad reinterpretation of" the LUC requirement carries "the 'same force and effect' as a rule promulgated by the Commission" yet "goes into effect with no judicial review" when "the full Commission does nothing." *Brown I*, 2026 WL 2493115, at *13 (Wynn, J., concurring). Meanwhile, Petitioners are being forced to contend with rival committees' systemic campaign to "obliterate" them with *hundreds of millions* of dollars in unlawfully discounted party committee and JFC advertisements.[3] Because the Supreme Court stayed the Court's judgment in *Brown I*, only a writ of mandamus can prevent the Commission's "jurisdictional gamesmanship" from inflicting any further irreparable harm on Petitioners and broadcasters alike. *Brown I*, 2026 WL 2493115, at *13 (Wynn, J., concurring).

In these unique circumstances, the traditional *TRAC* factors are a poor fit to assess the reasonableness of the Commission's delay. *See Gonzalez*, 985 F.3d at 375 (noting that courts in this Circuit are "not limited to [the *TRAC*] factors and [are] not required to use them"). But those factors likewise favor Petitioners:

Under the first and second factors, Congress has supplied a "rule of reason" that directs the Commission to meet at least once a month "with the objective of rendering a final decision" on "all original application[s]" "within three months from the date of filing." 47 U.S.C. § 155(d); *see TRAC*, 750 F.2d at 80 (the timing of agency "decisions must be governed by a 'rule of reason,'" which may be

[3] Foldi, *supra* note 2.

“suppl[ied]” by a congressional “timetable” to act (citation omitted)). Petitioners’ Application for Review has now been pending for more than four months. On the third factor, although the Public Notice does not implicate “human health and welfare,” it is not merely an “economic regulation” either. *TRAC*, 750 F.2d at 80. Unlawful campaign finance regulations like this one undermine the “electoral fairness” essential to a successful democracy. *Randall v. Sorrell*, 548 U.S. 230, 249 (2006). The Supreme Court’s stay of *Brown I* recognized the irreparable harm that inheres in this area. *NRCC*, 2026 WL 2618462, at *2. That is especially true for candidates themselves, who “have an interest in a fair [electoral] process” and “suffer when the process departs from the law.” *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 77 (2026). On the fourth, “expediting delayed action” here will not impact any other “agency activities of a higher or competing priority” because the Commission’s only remaining task is to publish a decision it has already written or, if it does not wish to publish that one for whatever reason, to deny the Application without reasoning. *TRAC*, 750 F.2d at 80. And on the fifth, Petitioners are candidates in *this year’s* election—they cannot recover the fair competitive opportunities they are losing while the Commission withholds its final order. *See id.* (Courts should consider “the nature and extent of the interests prejudiced by delay.”). Finally, although “the court need not find any impropriety lurking behind agency lassitude,”

*id.* (internal quotation marks and citation omitted), the Court's previous concerns about "jurisdictional gamesmanship" are well-founded on this record.

## CONCLUSION

The Court should grant the Petition and issue a writ of mandamus requiring the Federal Communications Commission to issue a decision on Petitioners' Application for Review by September 18, allowing Petitioners to obtain meaningful relief through judicial review before the November election.

Dated: September 8, 2026

**ELIAS LAW GROUP LLP**

By: /s/ *David R. Fox*

David R. Fox
Richard A. Medina
Nicole E. Wittstein
Julianna D. Astarita
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
dfox@elias.law
rmedina@elias.law
nwittstein@elias.law
jastarita@elias.law

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 21(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,664 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2605) in 14 pt Times New Roman Font.

By: /s/ *David R. Fox*

David R. Fox

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that I have caused the foregoing petition to be served by FedEx overnight service and by electronic mail on the Federal Communications Commission as follows:

Federal Communications Commission
Attn: General Counsel
9050 Junction Drive
Annapolis Junction, MD 20701
(202) 418-1700
litigationnotice@fcc.gov

By: /s/ *David R. Fox*