IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| In re Sherrod Brown, et al., Petitioners. | ) ) ) ) | No. 26-2230 |

**OPPOSITION OF FEDERAL COMMUNICATIONS COMMISSION TO PETITION FOR WRIT OF MANDAMUS**

The Federal Communications Commission opposes the petition for a writ of mandamus. For the past several months—until the Supreme Court issued an order favorable to the Commission less than two weeks ago—petitioners disavowed the option of seeking relief under the All Writs Act and maintained that they needed relief from the staff's public notice regarding the Communications Act's lowest unit charge requirements by September 4, before the general election cycle began. Petitioners made their tactical choice; they should be held to it. There is no reason now to entertain a further challenge that could disrupt campaign advertising rules in the middle of the general election period.

A "writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations," available only to parties who demonstrate that their "right to issuance of the writ is clear and indisputable." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988). Petitioners in this case—four Democratic candidates running for office in the upcoming midterm elections—have utterly "failed to satisfy this stringent standard." *Ibid*.

Petitioners also ask this Court to direct the FCC to issue a final order by September 18, 2026—just three days from now—addressing their application for review. We are unaware of any precedent for requiring the FCC to take action in such a compressed time frame.

Petitioners contend that mandamus is warranted because agency action on their application has been unreasonably delayed. But previously, when they sought direct review of the staff's public notice, petitioners told this Court that mandamus would be "cold comfort" to them. *See* Petitioners' Reply Br. (Doc. 59), *Brown v. FCC*, No. 26-1785, at 24 n.4 (4th Cir. filed July 27, 2026). And two of the judges on the panel in that earlier case recognized that a months-long delay is "generally insufficient for mandamus relief." *Brown v. FCC*, No. 26-1785, 2026 WL 2493115, at *13 n.1 (4th Cir. Aug. 25, 2026) (Wynn, J., concurring); *accord id.* at *20 (Wilkinson, J., dissenting).

Petitioners assert that this case presents "unique circumstances" making a delay of only a few months unreasonable. Pet. 19. But they ignore a significant, relevant circumstance: their own tactical decision, before now, to disavow any desire for mandamus relief. Having made a choice not to seek mandamus before the start of the general election cycle, petitioners should be held to that choice. When petitioners insisted before this Court that the staff's public notice was directly reviewable, the Commission reasonably diverted its attention from

addressing their application for administrative relief to defending against their claims in this Court.

Petitioners thus have not established that the Commission's delay is "so egregious as to meet the demanding standard for [this Court] to interfere with the agency process through a writ of mandamus." *In re City of Virginia Beach*, 42 F.3d 881, 886 (4th Cir. 1994). That "agency process" remains ongoing. Earlier today, in response to statements by this Court and one of the Commissioners that the agency had not solicited public comment on petitioners' application for review, the Media Bureau issued a public notice seeking comment on the application. Public Notice, Media Bureau Seeks Comment on Application for Review of Public Notice Pertaining to Lowest Unit Charge Requirements, MB Dkt. No. 26-253, DA 26-982 (Media Bur. rel. Sept. 15, 2026) (September 15 Public Notice), *available at* https://docs.fcc.gov/public/attachments/DA-26-982A1.pdf. The Commission requires the opportunity to consider comments submitted by interested parties before it issues an order addressing the application for review. *Cf. Press Commc'ns LLC. v. FCC*, 875 F.3d 1117, 1121 (D.C. Cir. 2017) ("Normally, an agency [action] would be arbitrary and capricious if the agency has … entirely failed to consider an important aspect of the problem.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In any event, the equities militate against mandamus. Among other things, the expedited litigation that petitioners hope to precipitate by compelling immediate Commission action would seriously disrupt the ongoing election campaign season. Further litigation also risks impairing the "First Amendment rights" of political party committees "to speak and coordinate their political activities freely" at this "critical" time in the election cycle. *Nat'l Republican Congressional Comm. v. Brown*, 2026 WL 2618462, at *2 (U.S. Sept. 4, 2026) (per curiam) (*NRCC*). Particularly when the Supreme Court has "stressed the importance of not keeping matters in a continually unsettled state" during this time, Order Granting Expedition (Doc. 12), slip op. at 2 (Wilkinson, J., dissenting), the "drastic remedy" of mandamus is in no respect "appropriate under the circumstances." *In re Moore*, 955 F.3d 384, 390 (4th Cir. 2020). The Court should deny the petition.

**BACKGROUND**

Section 315 of the Communications Act provides that "during the forty-five days preceding the date of a primary or primary runoff election and during the sixty days preceding the date of a general or special election," the "charges made for the use of any broadcasting station" by any "legally qualified candidate" for office "in connection with" the candidate's election campaign "shall not exceed … the lowest unit charge of the station for the same class and amount of time for the

same period." 47 U.S.C. § 315(b)(1)(A). The FCC has adopted a rule to implement the Act's "lowest unit charge" (LUC) provision. *See* 47 C.F.R. § 73.1942(a)(1).

On March 30, 2026, in anticipation of the upcoming election season, the FCC's Media Bureau issued a public notice on the application of the Act's LUC requirements. *See* FCC Media Bureau Provides Guidance on Entitlement to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and All Authorized Committees, DA 26-300 (Media Bur. Mar. 30, 2026) (Public Notice) (Pet. Add. 27-28). The Bureau stated that those requirements "are applicable to (1) authorized committees, including authorized committees that engage in joint fundraising with legally qualified candidates for federal office, and (2) advertisements that qualify as coordinated expenditures of political parties and legally qualified candidates for federal office." *Id.* at 1. Of particular relevance here, "restat[ing] previous Media Bureau guidance," the Bureau explained that "candidate-party coordinated advertisements are subject to" the LUC requirements, "provided that the ad otherwise complies with other applicable requirements in … the Commission's rules and section 315(b) of the Act." *Id.* at 2.

On April 29, 2026, petitioners filed with the FCC an application for review of the Bureau's Public Notice. They asked the full Commission to "set aside" the Bureau's guidance "and explain that only candidates and their principal campaign committees are entitled to lowest unit charge." App. for Review at 19.

Less than two months later—without awaiting a decision on their application for review—petitioners filed a petition for review of the Bureau's Public Notice in this Court. They invoked this Court's jurisdiction under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1), provisions that grant the courts of appeals jurisdiction to review final FCC orders. The Commission moved to dismiss the petition for lack of jurisdiction. It argued that because there was not yet an order "disposing of" petitioners' application for review, there was no final, reviewable Commission order, and the petition for review was incurably premature. *See* 47 U.S.C. § 155(c)(7); *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam).

Without resolving that motion, this Court ordered expedited merits briefing and, on August 7, 2026, heard oral argument. Afterwards, on August 14, the FCC Chairman "circulated a proposed order on the application for Commission review." Letter Pursuant to Federal Rule of Appellate Procedure 28(j) (Doc. 63-1), *Brown v. FCC*, No. 26-1785, at 1 (4th Cir. filed Aug. 17, 2026). On August 17, the Commission notified this Court of that development. *See ibid.* In the same letter,

it advised the Court of another, related staff-level order, in which, on August 13, the Media Bureau dismissed a petition for reconsideration of the Public Notice filed by the Television Bureau of Advertising, Inc. *See ibid.* On August 25, 2026, FCC Commissioner Anna Gomez issued a statement expressing her disagreement with the Media Bureau's August 13 order. *See* Pet. Add. 41-43.

That same day, while the agency's administrative process remained underway, a divided panel of this Court granted the petition for review of the Media Bureau's March 2026 Public Notice. *Brown*, 2026 WL 2493115. The Court declared it was "confident" of its "jurisdiction to review the Public Notice." *Id*. at *4. Reaching the merits, the Court rejected the Bureau's statement of section 315(b)'s requirements, concluding that the Public Notice "unlawfully requires broadcasters to extend the LUC to political parties and joint fundraising committees with non-candidate members." *Id*. at *7.

Judge Wilkinson dissented. In his judgment, the Court lacked jurisdiction because there was no final Commission order to review. *Id*. at *17-*22 (Wilkinson, J., dissenting). On the merits, he took the position that petitioners' reading of section 315(b), which the majority adopted, unduly burdens political speech and likely violates the First Amendment. To avoid this constitutional issue, Judge Wilkinson would have upheld the Bureau's interpretation of the statute if the Court had jurisdiction. *Id*. at *22-*28 (Wilkinson, J., dissenting).

After the Court denied a motion by the National Republican Congressional Committee and the National Republican Senatorial Committee to stay the mandate, the committees applied for a stay from the Supreme Court. In a *per curiam* order entered on September 4, 2026 (with only Justice Jackson dissenting), the Supreme Court granted the application and ordered that the mandate be recalled and stayed pending the filing and disposition of a petition for certiorari.

In granting the stay, the Court explained that the Communications Act "contemplates that an aggrieved party will file an application for review" of any order of the FCC's staff with which it disagrees. *NRCC*, 2026 WL 2618462, at *2. After that, the Court observed, "the Commission will resolve that application by order … before an aggrieved party may petition for further review in federal court." *Ibid.* Based on this understanding of the Act, the Supreme Court concluded that "the Fourth Circuit likely lacked statutory jurisdiction" over the petition for review. *Ibid.*

The Court also determined that the party committees would "likely suffer irreparable harm absent a stay." *Ibid.* Without a stay, they would be unable to purchase advertising at the lowest unit charge "in the critical weeks leading up to the midterms." *Ibid*. "That injury," the Court recognized, "implicates [the committees'] First Amendment rights to speak and coordinate their political

activities freely." *Ibid*. (citing *Nat'l Republican Senatorial Comm. v. FEC*, 146 S. Ct. 2404, 2415-17 (2026) (*NRSC*)).

When previously urging this Court to grant direct review of the Media Bureau's Public Notice, petitioners disavowed any desire to obtain a writ of mandamus. *See Brown* Reply Br. (Doc. 59) at 24 n.4. In the wake of the Supreme Court's order, however, they have reversed course. With the eligibility period for the lowest unit charge already underway, they now request the extraordinary remedy of mandamus that they earlier disclaimed. *See ibid.* ("a mandamus order would be cold comfort").

What is more, petitioners ask for a writ directing the FCC to publish a final order by September 18, 2026. That is just three days from this filing, one month from when the FCC Chairman first circulated a draft order to the other Commissioners, less than a month after this Court's decision, and only two weeks since the Supreme Court's stay order (which contemplated that the Bureau's guidance would remain in place for at least the 90 days during which parties could petition for a writ of certiorari).

On September 15, 2026, the Media Bureau issued a public notice seeking comment on petitioners' application for review. September 15 Public Notice, DA 26-982, *available at* https://docs.fcc.gov/public/attachments/DA-26-982A1.pdf. The Bureau explained that it was responding to statements by Commissioner

Gomez and this Court noting "a lack of public input on the Application for Review." *Id*. at 2; *see* Pet. Add. 42 (Statement of Commissioner Gomez, at 2); *Brown*, 2026 WL 2493115, at *6. Under the comment cycle established by the Bureau, comments on the application are due on September 25, 2026, with reply comments due on September 30, 2026. September 15 Public Notice at 1.

**ARGUMENT**

"Mandamus relief is a drastic and extraordinary remedy reserved for extraordinary cases." *In re Musk*, 169 F.4th 445, 448 (4th Cir. 2026) (citing *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). To obtain a writ of mandamus, petitioners "must satisfy 'the burden of showing that [their] right to issuance of the writ is clear and indisputable.'" *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999) (quoting *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)). Even if petitioners satisfy that heavy burden, moreover, this Court still "must, in its discretion, be satisfied that [a] writ [of mandamus] is appropriate under the circumstances." *Musk*, 169 F.4th at 448 (quoting *Cheney*, 542 U.S. at 381). "In other words," the Court "must exercise equitable discretion before granting mandamus relief." *South Carolina v. United States*, 907 F.3d 742, 755 (4th Cir. 2018).

Mandamus is unwarranted in this case. Where (as here) a request for mandamus is based on a claim of unreasonable agency delay, "only an egregious

delay would warrant the extraordinary remedy of mandamus." *City of Virginia Beach*, 42 F.3d at 885. Petitioners filed their application for Commission review of the Media Bureau's Public Notice on April 29, 2026—less than five months ago. A few "months of agency inaction" in this "difficult and complex" case "is plainly not egregious." *Brown*, 2026 WL 2493115, at *20 (Wilkinson, J., dissenting); *see also id*. at *13 n.1 (Wynn, J., concurring) ("a several-month delay is generally insufficient for mandamus relief"); *cf.* Pet. 19 (recognizing that the "traditional … factors" for "assess[ing] the reasonableness of the Commission's delay" "are a poor fit" in this case).

Indeed, even prolonged agency delay does not warrant mandamus where, during the period of delay, the agency "ha[s] been occupied with legitimate agency tasks." *City of Virginia Beach*, 42 F.3d at 885. That is so here. After the Commission moved promptly to dismiss petitioners' direct challenge to the Public Notice and the Court ordered expedited merits briefing and oral argument without deciding that motion, the agency appropriately focused its attention on the litigation and let that litigation proceed without pushing the administrative proceeding forward. *Cf.* Oral Arg., *Brown v. FCC*, No. 26-1785, at 56:01-57:35 (4th Cir. Aug. 7, 2026) (Judge Wilkinson: "And so it seems to me quite possible that the time period that has elapsed was in part brought on by the fact that this petition was filed.").

Petitioners assert that the FCC's "[w]ithholding" of "a final order on a decision the Commission has already made constitutes egregious delay." Pet. 16. They maintain that "[t]he Commission has made its decision—it simply must publish the order." *Id.* at 18. That is incorrect. As the Commission previously advised this Court, the FCC Chairman circulated a draft order to the other Commissioners on August 14. *See Brown* 28(j) Letter (Doc. 63-1) at 1. But that was just a month ago. In the meantime, there have been significant developments relevant to the order under consideration—the decisions issued by this Court and the Supreme Court, and the separate statement of Commissioner Gomez concerning her interpretation of the LUC requirements.

No Commission decision is final until the Commission releases a final order. Here, both this Court and Commissioner Gomez have criticized the Media Bureau's Public Notice (and, in the Commissioner's case, the Bureau's subsequent order dismissing a petition for reconsideration). Among other things, the Court and Commissioner Gomez have suggested that the agency should have solicited public comment on petitioners' application for review. *See* Pet. Add. 42 (Statement of Commissioner Gomez, at 2); *Brown*, 2026 WL 2493115, at *6. Courts have also made clear that the FCC has an obligation to respond in its orders to points raised in a dissenting Commissioner's statement. *Office of Commc'n of United Church of Christ v. FCC*, 465 F.2d 519, 523 (D.C. Cir. 1972); *Prometheus Radio Project v.*

*FCC*, 824 F.3d 33, 57-58 (3d Cir. 2016); *Schurz Commc'ns, Inc. v. FCC*, 982 F.2d 1043, 1048 (7th Cir. 1992) (a Commission order was arbitrary and capricious because the Commission "majority … ignored most of the points in [the FCC Chairman's] long and detailed dissent"). Furthermore, the Commission requires the opportunity to address any significant arguments raised in comments before it issues a final order. Without that opportunity, the agency's order could be vulnerable to challenges that the Commission "failed to consider … important" arguments, such that the order could be found "arbitrary and capricious." *Press Commc'ns*, 875 F.3d at 1121 (quoting *State Farm*, 463 U.S. at 43).

The Supreme Court, meanwhile, has indicated that to upend the governing LUC guidance "in the critical weeks leading up to the midterms" would risk irreparable harm to the party committees. *NRCC*, 2026 WL 2618462, at *2. These developments are necessarily relevant to the Commission's previously circulated order and may necessitate revisions before any final order is released. Accordingly, the Media Bureau earlier today issued a public notice seeking comment on the application for review. September 15 Public Notice, DA 26-982. The Commission intends to review the comments of interested parties before issuing a final decision on petitioners' application. The writ of mandamus sought by petitioners would improperly interrupt that reasonable "agency process." *City of Virginia Beach*, 42 F.3d at 886.

Petitioners may have a statutory right to a Commission decision addressing their application for review, *see* 47 U.S.C. § 155(c)(4), but petitioners have no right—much less a "clear and indisputable" right—to a decision on an expedited timetable. Having failed to show any egregious delay by the Commission in issuing a final order, petitioners are not entitled to a writ of mandamus.

The equities also weigh decisively against mandamus. Petitioners could have petitioned for relief under the All Writs Act long ago. But they expressly disavowed that course of action, claiming that "a mandamus order would be cold comfort to" them. *Brown* Reply Br. (Doc. 59) at 24 n.4. Instead, over the Commission's jurisdictional objections, petitioners sought direct review of the Media Bureau's Public Notice, asking this Court to "set[ ] aside the [Bureau's] LUC Guidance by September 4, 2026, to avoid irreparable harm." *Ibid*. Although this Court granted the petition for review, the Supreme Court recalled and stayed the mandate, finding that "the Fourth Circuit likely lacked statutory jurisdiction to address [petitioners'] challenge" to the Bureau's Public Notice. *NRCC*, 2026 WL 2618462, at *2. In light of this development, petitioners have shifted tactics. *See* Pet. 1 (petitioners "bring this mandamus petition to address the Supreme Court's jurisdictional concern"). But having made a tactical choice not to seek mandamus before the general election cycle began, they should be held to that choice now.

Petitioners contend that the Court should compel the FCC to issue a final order by September 18, so that Petitioners can "obtain meaningful relief through judicial review before the November election." Pet. 21. That is just three days from now—an extremely compressed time for agency action, which makes the "extraordinary" remedy petitioners seek even more than usually "drastic." *Moore*, 955 F.3d at 390. Indeed, so far as we are aware, such an order would be unprecedented.

What is more, the further litigation that petitioners seek to pursue, which would occur in the middle of the current election cycle, could cause extensive and disruptive confusion about the implementation of the Communications Act's LUC provision. "When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam); Order (Doc. 12), No. 26-2230, at 2 (Wilkinson, J., dissenting) (noting "the importance of not keeping matters in a continually unsettled state in the 'critical weeks leading up to the midterms'" (quoting *NRCC*, 2026 WL 2618462, at *2)). In these circumstances, it would be inequitable to issue a writ of mandamus merely to facilitate litigation that could unsettle campaign rules during the final weeks of

the general election cycle. Indeed, we are already 56 days into the 105-day period during which LUC regulations apply. (The full 45-day period preceding primary elections has elapsed, plus 11 days of the 60-day period before general elections.)

Finally, the balance of harms also tips against petitioners' request for extraordinary relief. Petitioners claim they will suffer "irreparable harm" if they do not obtain a writ of mandamus. Pet. 14. They have previously asserted that the Media Bureau's Public Notice injures them by "reducing the cost of advertising against" them, "increasing the volume of opposing advertising they must confront, and placing them at a competitive disadvantage." *See Brown*, 2026 WL 2493115, at *7 n.9. But neither the Public Notice nor a Commission order affirming it would in any way restrict the ability of petitioners—or their authorized political committees—to engage in political speech by purchasing broadcast advertising at the lowest unit charge. By contrast, the interpretation of 47 U.S.C. § 315(b)(1)(A) advocated by petitioners would preclude party committees from obtaining the lowest unit charge by right. "[P]ay[ing] more for advertising" would "hamper[] their efforts to reach the electorate in the critical weeks leading up to the midterms." *NRCC*, 2026 WL 2618462, at *2. The resulting injury to party committees "implicates their First Amendment rights to speak and coordinate their political activities freely." *Ibid*. (citing *NRSC*, 146 S. Ct. at 2414-16); *see also Brown*, 2026 WL 2493115, at *24-*28 (Wilkinson, J., dissenting). Such an

infringement on constitutional rights far outweighs the vague and speculative allegations of harm asserted by petitioners.

## CONCLUSION

Petitioners have failed to demonstrate that they are entitled to the extraordinary remedy of mandamus. Their petition should be denied.

Respectfully submitted,

Jacob M. Lewis
Associate General Counsel

Sarah E. Citrin
Deputy Associate General Counsel

/s/ James M. Carr

James M. Carr
Counsel

Federal Communications Commission
Washington, DC 20554
(202) 418-1740

September 15, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

☒ this document contains 3,661 words, *or*

☐ this document uses a monospaced typeface and contains _ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word in Office 365 in 14-point Times New Roman, *or*

☐ this document has been prepared in a monospaced spaced typeface using ______________________ with ________________.

*/s/ James M. Carr*

James M. Carr
*Counsel*

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740

**CERTIFICATE OF FILING AND SERVICE**

I, James M. Carr, hereby certify that on September 15, 2026, I filed the foregoing Opposition of Federal Communications Commission to Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
*Counsel*

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740