FILED: October 7, 2026

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 26-2230**

In re: SHERROD BROWN; JON OSSOFF, ROY COOPER, and KRISTEN MCDONALD RIVET,

Petitioners.

O R D E R

KING and WYNN, Circuit Judges:

In the face of the 2026 general election season, the Federal Communications Commission (the "FCC," or the "Commission") has endeavored to create from whole cloth a new rule entirely outside the purview of judicial review. Specifically, the FCC's Media Bureau has extended to political parties favorable campaign advertising rates to which under law only the candidates themselves are statutorily entitled. And the Commission has since delayed agency review in an obvious effort to preclude judicial review prior to the November 3 election day. If allowed to continue dragging its feet, the FCC will have evaded meaningful judicial review of its newly created rule. The FCC's actions are not only unfortunate — but also an assault on our Constitution's separation of powers. Put simply, the FCC has thumbed its nose at Congress's statutory commands and the settled principle of judicial review. *See Marbury v. Madison*, 1 Cranch 137, 177 (1803) (Marshall, C.J.) ("It is emphatically the province and duty of the judicial department to say what the

law is.”). We have heretofore accorded the FCC a substantial amount of grace, but its gamesmanship must end. Consequently, as explained herein, we are obliged to grant the pending petition for mandamus relief.

I.

These mandamus proceedings are part of an ongoing dispute over who is entitled to the “lowest unit charge,” or “LUC,” for broadcast campaign advertisements in the run-up to elections. The statutory LUC requirement provides that during the 45-day period preceding a primary election and the 60-day period preceding a general election, “[t]he charges made for the use of any broadcasting station by any person who is a legally qualified candidate for any public office in connection with his campaign” must not exceed “the lowest unit charge of the station for the same class and amount of time for the same period.” *See* 47 U.S.C. § 315(b)(1)(A). Pursuant to the plain statutory language, it has long been understood and accepted — including by the FCC itself — that only candidates, that is real persons, are entitled to the LUC.

On March 30, 2026, however, the FCC’s Media Bureau issued a “Public Notice” that requires broadcasters to extend the LUC to political parties engaged in coordinated expenditures with candidates and to joint fundraising committees with political-party and other non-candidate members. Although the Public Notice purports to merely restate previous Media Bureau guidance concerning LUC eligibility, it identifies no previous Media Bureau guidance specifying that non-persons and non-candidates — political parties

and joint fundraising committees with non-candidate members — can ever be entitled to the LUC.

In the resulting dispute, the FCC is joined on one side by the intervenors National Republican Congressional Committee and National Republican Senatorial Committee (together, the "Party Committees"). On the other side are a Democratic candidate for the U.S. House of Representatives, Kristen McDonald Rivet of Michigan, and three Democratic candidates for the U.S. Senate, Sherrod Brown of Ohio, Jon Ossoff of Georgia, and Roy Cooper of North Carolina (collectively, the "Federal Candidates").

A.

More than five months ago, on April 29, 2026, the Federal Candidates filed an Application for Review with the FCC (the "Application for FCC Review," or the "Application"), seeking to have the full Commission set aside the Media Bureau's Public Notice. The Application argues that rather than reiterating well-settled principles, the Public Notice constitutes a novel statutory interpretation that is directly contradicted by FCC and other precedents, and that is incompatible with the plain language of the LUC requirement and relevant campaign finance statutes.

The Application also addresses how the Public Notice aggrieves the Federal Candidates, explaining that they are in highly competitive races for U.S. House and Senate seats being targeted by the Party Committees; that the Party Committees are expected to heavily spend on advertisements opposing the Federal Candidates and supporting their opponents, including through coordinated expenditures and joint fundraising committee advertising; and that by requiring broadcasters to extend the LUC to political parties and

joint fundraising committees for such advertisements, the Public Notice places the Federal Candidates at a competitive disadvantage, forcing them to respond to a higher volume of opposing advertisements than otherwise could have been purchased at the same price point, and diluting their independent campaign messaging.

Twice, the Application explicitly urges an expedited decision by the Commission given the impending November general election. Nevertheless, in the more than five months that have followed, the Commission has yet to resolve the Federal Candidates' Application for FCC Review.

B.

1.

The Federal Candidates first turned to this Court in late June 2026, filing a Petition for Review in matter No. 26-1785, *Brown v. FCC*, and successfully moving to expedite our proceedings. With the support of the Party Committees, the FCC sought dismissal of the Petition for Review for lack of jurisdiction, principally contending that there could be no judicial review of the Public Notice under 47 U.S.C. § 155(c)(7) until the Commission issues a decision on the Application for FCC Review.

In response to the FCC's jurisdictional contention, the Federal Candidates maintained that the only statutory precondition to filing their Petition for Review was first filing the Application for FCC Review, such that there was no need to await the Commission's decision. Alternatively, the Federal Candidates asserted that because the Commission, up to that point, had taken no action whatsoever on the Application for FCC Review, the Application had been constructively denied.

2.

Following the August 7, 2026, oral argument in this Court on the Federal Candidates' Petition for Review — and with the matter poised for decision — the FCC notified us on August 17, 2026, that there had finally been a modicum of action on the Application for FCC Review. Specifically, the FCC advised that its Chairman had circulated a proposed order to his fellow Commissioners on August 14, 2026, that would dismiss the Federal Candidates' Application as an "improper vehicle" for the Commission's review of the Public Notice. *See Brown v. FCC*, No. 26-1785 (4th Cir. Aug. 17, 2026), ECF No. 63, at 1 (FCC's letter to this Court under Federal Rule of Appellate Procedure 28(j)). According to the FCC, the premise of the proposed order is that the Public Notice merely restates previous Media Bureau guidance, such that the Application would have the Commission improperly "revisit[] existing law on the eve of an election, after primaries have occurred and plans have been made for the general election based on the existing rules." *Id.*

Along with the proposed order dismissing the Federal Candidates' Application, the FCC proffered a recent order of the Media Bureau denying a petition of the Television Bureau of Advertising, Inc. ("TVB"), for reconsideration of the Public Notice. *See In re Entitlement to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and All Authorized Committees*, DA 26-851, Order on Reconsideration (FCC Aug. 13, 2026). Sticking with the FCC's erroneous characterization of the Public Notice as a reiteration of previous guidance, the Media Bureau's order asserts that "[s]uch a reminder is not a decision or action that can be challenged through a petition for reconsideration."

*Id.* at 1. Once again, however, the Media Bureau failed to identify any previous FCC guidance stating that political parties and joint fundraising committees with non-candidate members can be entitled to the LUC. Instead, the order vaguely references prior "response[s] to informal inquiries from regulated parties." *Id.* at 2.

One of the three FCC Commissioners dissented from the Media Bureau's denial of reconsideration in the TVB matter, while also criticizing irregular processes utilized with respect to the Federal Candidates' Application and the Public Notice itself. *See In re Entitlement to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and All Authorized Committees*, DA 26-851, Statement of Commissioner Anna M. Gomez (FCC Aug. 25, 2026). The dissent laments that "[n]othing about this proceeding was handled correctly." *Id.* at 2. In conjunction with the dissent, the same Commissioner issued a public statement asserting that "[t]he American people should not have sweeping election-year rule changes forced on them in the dark, on the eve of an election, without a single opportunity for public input." *See* Anna M. Gomez, *FCC to Unleash Flood of Dark Money into Broadcast Advertising Ahead of Midterm Election*, at 1 (Aug. 25, 2026).[1]

[1] By law, the FCC is to be comprised of five Commissioners, who are appointed by the President and confirmed by the Senate. *See* 47 U.S.C. § 154(a). No more than three of the five Commissioners can be members of the same political party. *Id.* § 154(b)(5). Currently, the FCC has only three Commissioners — two Republicans and one Democrat — meaning that the Commission has two vacancies. The dissenting Commissioner, Anna M. Gomez, is the lone Democrat on the Commission.

3.

On August 25, 2026, this Court granted the Federal Candidates' Petition for Review, setting aside and holding for naught the Public Notice. *See Brown v. FCC*, No. 26-1785 (4th Cir. Aug. 25, 2026), ECF No. 66 ("*Brown I*"). Rejecting the FCC's jurisdictional contention, we recognized that the Public Notice "constitutes a 'final' order because it is — in both substance and operation — a legislative rule, meaning that the Public Notice is necessarily the law of the land and final." *Id.* at 15-16.

We further recognized that by its actions — and inaction — the Commission had constructively denied the Federal Candidates' Application for FCC Review and adopted the Media Bureau's Public Notice. We explained:

> The present circumstances readily constitute a constructive denial. When the Federal Candidates initiated this action on June 22, 2026, their Application for FCC Review was pending with the Commission for approximately two months. When we conducted our oral argument earlier this month, the Application was pending for 100 days. On September 4 — the date the LUC requirement becomes effective for the impending November election — it will be 128 days since the Federal Candidates filed their Application.
>
> Despite the time-sensitive nature of these proceedings, the Commission intentionally took no action and offered no response to the Application for more than three months. The Commission did not, for example, seek responses from impacted parties, or engage in fact finding, or secure supplemental briefing, or solicit public comment, or schedule or conduct an oral argument.
>
> Meanwhile, at our oral argument, the FCC's lawyer admitted — with commendable candor — that "it is very unlikely that the Commission will act here before September 4th." *See* Oral Argument at 49:49-50:12, *Brown v. FCC*, No. 26-1785 (4th Cir. Aug. 7, 2026). Concomitantly, the lawyer also represented to this Court that there would be value in awaiting the Commission's decision on the Public Notice's merits and that the Public Notice is, in any event, absolutely correct.

> Ten short days later, the Commission finally took some action on the Federal Candidates' Application. But that action had nothing to do with assessing the merits of the Public Notice either by September 4, 2026, or ever. Rather, the FCC Chairman proposed the summary dismissal of the Application as unreviewable by the Commission.
>
> In these unusual circumstances, we are satisfied that the Commission has constructively denied the Application for FCC Review and thereby adopted the Public Notice. *Cf. Friedman v. FAA*, 841 F.3d 537, 542-43 (D.C. Cir. 2016) (finding constructive denial where the FAA "placed [the applicant] in a holding pattern" by refusing to issue a formal decision). The Public Notice is "final" for this reason.

*See Brown I* at 14-15. Given our constructive denial ruling, we further recognized that "we need not wade into the parties' dispute as to whether the only statutory precondition to filing the Petition for Review was first filing the Application for FCC Review (as the Federal Candidates contend), or whether 47 U.S.C. § 155(c)(7) permits judicial review only after the Commission has ruled on the Application (as the FCC argues)." *Id.* at 15 n.8.

As for the merits of the Public Notice, we emphasized "that the legitimacy of the Public Notice turns on a question of pure statutory interpretation, and that our Court is obliged to 'exercise [its own] independent judgment' in conducting that review." *See Brown I* at 18 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024)). That is, we underscored that "it is 'emphatically the province and duty of' our Court — not the FCC — 'to say what the law is.'" *See id.* (quoting *Loper Bright*, 603 U.S. at 412 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803))).

We then easily concluded "the LUC requirement and pertinent campaign finance statutes are clear that neither political parties nor joint fundraising committees with non-

candidate members can be entitled to the LUC." *See Brown I* at 28-29. And we ruled that, "in asserting otherwise, the Public Notice is plainly contrary to law and cannot stand." *Id.* at 29. Consequently, we granted the Federal Candidates' Petition for Review and held for naught the Public Notice.

Our distinguished colleague dissented, asserting both that we lacked jurisdiction to review the Public Notice and that the Public Notice is correct on the merits. On the latter issue, the dissent relied on a First Amendment theory not raised by the FCC or Party Committees. *See Brown I* at 40 (Wilkinson, J., dissenting) (introducing the theory that "the First Amendment would disfavor [the Federal Candidates'] view of [what the dissent deemed to be] ambiguous statutory text").

On August 26, 2026, the Party Committees moved to stay the issuance of the *Brown I* mandate, pending disposition of a petition for writ of certiorari to the Supreme Court. On August 27, 2026, this Court denied the Party Committees' motion and directed the clerk to immediately issue the mandate.

C.

On August 28, 2026, the Party Committees filed an emergency application in the Supreme Court for a stay of our *Brown I* mandate pending the filing and disposition of a petition for a writ of certiorari. By an opinion of September 4, 2026, the Supreme Court granted the requested stay and recalled our mandate. *See Nat'l Republican Congressional Comm. v. Brown*, No. 26A274 (U.S. Sept. 4, 2026) (per curiam) ("*Brown II*"). In doing so, the Court concluded that the Party Committees showed "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair

prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Id.* at 2 (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam)).

The Court specified that "the first and second stay factors weigh in favor of granting the application," in that "the Fourth Circuit likely lacked statutory jurisdiction to address [the Federal Candidates'] challenge." *See Brown II* at 3. Without addressing our ruling that the Commission constructively denied the Federal Candidates' Application for FCC Review, the Court concluded that "the Communications Act makes clear that an aggrieved party must wait for the Commission to resolve its application for review by order before filing a petition for judicial review." *Id.* at 2. Key to the Court's conclusion was that "[t]he Commission is required to resolve every application it receives." *Id.* at 3 (citing 47 U.S.C. § 155(c)(4)). The Court summarized that "[t]he Communications Act thus contemplates that an aggrieved party will file an application for review with the Commission, that the Commission will resolve that application by order, and that public notice of that order will issue before an aggrieved party may petition for further review in federal court." *Id.*

With respect to the third factor, the Court considered the likelihood of irreparable harm to only the Party Committees. *See Brown II* at 3. In ruling in favor of the Party Committees on this stay factor, the Court explained:

> They represent that, in light of the Fourth Circuit's decision — which the Fourth Circuit likely lacked jurisdiction to issue — broadcasters are already rescinding favorable rates. Current and future rescissions will require the [Party Committees] to pay more for advertising space, thereby hampering their efforts to reach the electorate in the critical weeks leading up to the midterms. That injury, which implicates their First Amendment rights to

> speak and coordinate their political activities freely, cannot be remedied after the fact through refunds or reimbursements.

*Id.* at 3-4 (citing *Nat'l Republican Senatorial Comm. v. FEC*, 146 S. Ct. 2404 (2026)). Since the Supreme Court's stay, the Commission has neither entered its proposed dismissal order circulated by the FCC Chairman on August 14, 2026, nor otherwise resolved the Federal Candidates' Application.

D.

On September 8, 2026, the Federal Candidates commenced the present action by filing a petition for a writ of mandamus, requesting that this Court order the Commission to decide the still-pending Application for FCC Review. *See In re Brown*, No. 26-2230 (4th Cir. Sept. 8, 2026), ECF No. 2 (the "Mandamus Petition"). The Federal Candidates explain therein that they "bring this [Mandamus Petition] to address the Supreme Court's jurisdictional concern and enable a decisive ruling on the validity of the Public Notice before it is too late to matter." *Id.* at 1. As the Federal Candidates put it, "[m]andamus is urgently needed to prevent ongoing statutory violations and irreparable harm that th[is] Court already recognized in *Brown I*." *Id.* at 14.

We again expedited our proceedings, but this time over the dissent of our good colleague. *See In re Brown*, No. 26-2230 (4th Cir. Sept. 9, 2026), ECF No. 12. He preferred to immediately deny the Mandamus Petition on the premise that "[t]he Supreme Court's [*Brown II*] stay order stressed the importance of not keeping matters in a continually unsettled state in the 'critical weeks leading up to the midterms.'" *Id.* at 2 (quoting *Brown II* at 3). The dissent thereby mischaracterizes *Brown II*'s discussion of the likelihood of

irreparable harm to the Party Committees in the "critical weeks leading up to the midterms" as being an admonition to hold the Public Notice sacrosanct for the November 2026 general election.

Nearly five months after the Federal Candidates filed their Application for FCC Review, and just hours before the FCC's response to the Mandamus Petition was due, the Media Bureau issued a public notice on September 15, 2026, seeking comment on the Federal Candidates' Application through September 30, 2026. In its response to the Mandamus Petition, the FCC asserts that it had just solicited public comment "in response to statements by this Court and one of the Commissioners that the agency had not solicited [such] comment." *See In re Brown*, No. 26-2230 (4th Cir. Sept. 15, 2026), ECF No. 21, at 3 (referring to, inter alia, our mention in *Brown I* of soliciting public comment as an example of actions not taken in the months after the Application was filed). Representing that therefore the "'agency process' remains ongoing" and that "[t]he Commission requires the opportunity to consider comments submitted by interested parties before it issues an order addressing the [Federal Candidates' Application]," the FCC contends that mandamus relief is unwarranted. *Id.*

In their reply of September 17, 2026, the Federal Candidates refer to the FCC's solicitation of public comment as "a farce" and as confirmation "that the Commission's only goal is to postpone judicial review by any means necessary." *See In re Brown*, No. 26-2230, at 2 (4th Cir. Sept. 17, 2026), ECF No. 25. The reply elaborates that "[i]t is only now, having obtained a Supreme Court stay that heads off the risk of pre-election judicial review in the absence of a final Commission order, that the Commission is suddenly back

to insisting that it needs more time — with the request for public comment serving as the fig leaf for that insistence." *Id.* at 4.

On September 18, 2026, however, we accorded grace to the FCC and deferred action on the Mandamus Petition until at least October 1, 2026. *See In re Brown*, No. 26-2230 (4th Cir. Sept. 18, 2026), ECF No. 27. In so doing, we reminded the parties that under 47 U.S.C. § 155(c)(4), the Commission "is required to resolve every application it receives." *Id.* at 1 (quoting *Brown II* at 3). We further reminded the parties "that by statute, the Commission is required to conduct its business 'prompt[ly] . . . with the objective of rendering a final decision (1) within three months from the date of filing in all original application . . . cases in which it will not be necessary to hold a hearing, and (2) within six months from the final date of the hearing in all hearing cases.'" *Id.* at 1-2 (alterations in original) (quoting 47 U.S.C. § 155(d)). Our good colleague again dissented, once more expressing a preference to deny the Mandamus Petition "forthwith" and asserting that the Supreme Court instructed us in *Brown II* "that matters should be left in a stable state 'in the critical weeks leading up to the midterms.'" *Id.* at 3 (quoting *Brown II* at 3).

That brings us to October 1, 2026, when the FCC informed us that it has now solicited public comment in the related TVB matter, such that we should "further defer[]" these mandamus proceedings, if not outright deny the Mandamus Petition. *See In re Brown*, No. 26-2230, at 2 (4th Cir. Oct. 1, 2026), ECF No. 28 (FCC's letter to this Court under Federal Rule of Appellate Procedure 28(j)). As related by the FCC, on September 14, 2026, TVB filed an application for review of the Media Bureau's denial of reconsideration of the Public Notice, and on September 30, 2026, the FCC invited comment

on the TVB application through October 19, 2026. The FCC now contends that because there are "substantially overlap[ping]" issues between that application and the Federal Candidates' Application, the Commission should be accorded even more time to issue a decision on the Federal Candidates' Application so that it can "address the [applications] jointly." *Id.* at 1-2.

In response, the Federal Candidates assert that "the Commission seems again to have unnecessarily delayed its proceedings." *See In re Brown*, No. 26-2230, at 1 (ECF No. 29 (Federal Candidates' response to FCC's Rule 28(j) letter). The Federal Candidates emphasize that "TVB filed its [application] on September 14, *before* FCC opened public comment on the [Federal Candidates' Application]." *Id.* "Yet FCC waited until September 30 to open a new comment period on the 'substantially overlap[ping]' issues in TVB's [application]." *Id.* at 1-2 (first alteration in original). Addressing "[t]he new comment deadline [of] October 19," the Federal Candidates characterize it as "past any window for meaningful judicial relief this election." *Id.* at 2. The Federal Candidates thus implore this Court to immediately grant the Mandamus Petition.

## II.

The All Writs Act provides this Court with jurisdiction to issue "all writs necessary or appropriate." *See* 28 U.S.C. § 1651. We have consistently recognized that writs of mandamus have "long been reserved for extraordinary cases," where a petitioner "has no other adequate means to obtain relief." *See South Carolina v. United States*, 907 F.3d 742, 754 (4th Cir. 2018) (citation modified). Nevertheless, "courts may calibrate their discretion

to issue the writ and act more aggressively when the circumstances warrant it." *See Brown I* at 49 (Wilkinson, J., dissenting). To obtain a writ of mandamus, the petitioner must demonstrate "a clear and indisputable right to the relief sought and show that the responding party has a clear duty to do the specific act requested." *See South Carolina*, 907 F.3d at 754 (citation modified). Finally, after weighing the equities, a court must exercise its discretion and "be satisfied that the writ is appropriate under the circumstances." *Id.*

III.

The extraordinary circumstances of these proceedings readily demand that the Federal Candidates are immediately entitled to mandamus relief. Simply put, the FCC's professed need for further deliberation of the Federal Candidates' challenge to the Public Notice rings hollow, and our willingness to tolerate the FCC's delay tactics is at an end. *See Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (recognizing that in reviewing agency action, a court is "not required to exhibit a naivete from which ordinary citizens are free").

First of all, at this critical juncture, the Federal Candidates have no other adequate remedy through which they could obtain relief. That is so because, by staying on jurisdictional grounds this Court's mandate in *Brown I*, which set aside and held for naught the Public Notice, the Supreme Court has kept the Public Notice in effect. With the Public Notice still in effect, political parties are continuing to secure discounted LUC advertising rates in contravention of 47 U.S.C. § 315(b)(1)(A)'s plain statutory text. Furthermore, the

Public Notice constitutes a final order of the Commission, *see Brown I* at 15-16, so a claim for unlawful agency delay under the Administrative Procedure Act is unavailable. *See South Carolina*, 907 F.3d at 759 ("An action that is 'delayed' rather than 'withheld' is not generally a 'final action' that can be addressed under the APA." (citation modified)).

Second, the Federal Candidates have demonstrated that they have a clear right to relief and that the Commission has a clear duty to act on the Application. As the Supreme Court recognized in *Brown II*, 47 U.S.C. § 155(c)(4) explicitly requires that the Commission "shall pass upon" every application for review. *See Brown II* at 3; *see also South Carolina*, 907 F.3d at 756 (explaining that "the word 'shall' usually creates a mandate" indicating a nondiscretionary duty to perform). Moreover, the Commission is obligated to enter orders that are "necessary or appropriate to expedite the prompt and orderly conduct of the business of the Commission with the objective of rendering a final decision . . . within three months" from when an application for review is filed. *See* 47 U.S.C. § 155(d).

Yet more than five months have passed since the Federal Candidates filed their Application for FCC Review, and nearly two months have passed since the FCC's Chairman circulated his proposed order to the Commission disposing of the Application. This proposed order does not even address the merits of the Application — it would simply dismiss the Application as an improper vehicle. As the Federal Candidates have correctly highlighted for us, "[t]he Commission has made its decision — it simply must publish the order." *See* Mandamus Petition 18. Moreover, the Commission is not legally obligated to explain or justify its decision on the merits of the Application. *See* 47 U.S.C. § 155(c)(5)

("In passing upon applications for review, the Commission may grant, in whole or in part, or deny such applications without specifying any reasons therefor."). The Federal Candidates have thus demonstrated that they have a clear right to relief and that the Commission possesses a clear and specific statutory duty to act.

We have highlighted the extraordinary circumstances here — circumstances that the FCC has been fully aware of since the Federal Candidates filed their Application. Approximately seven months before the November 2026 general election — the same election for which the Federal Candidates seek relief — the FCC's Media Bureau issued its Public Notice, unlawfully extending the LUC to political parties in the critical period leading up to the election. Less than a month later, the Federal Candidates filed their Application for FCC Review. And despite its illegal expansion of the LUC from solely candidates to include political parties, the Commission has left the Application unresolved.

The FCC argues that the LUC should not be disturbed in the face of an impending election. But that contention is entirely irreconcilable with the reality that the Public Notice's stated purpose was to address the impending election. If this Court were to accept the FCC's position that mandamus is not available in this situation, the FCC could issue any rule regarding the LUC — without respect to its lawfulness — and be shielded from judicial review. We are unable to accept the proposition that mandamus is unavailable in these circumstances. As the Federal Candidates have carefully explained, they "are candidates in *this year's* election — they cannot recover the fair competitive opportunities they are losing while the Commission withholds its final order." *See* Mandamus Petition 20.

Finally, the procedural posture of this matter weighs heavily in favor of issuing a mandamus writ. As we recognized in *Brown I*, "the legitimacy of the Public Notice turns on a question of pure statutory interpretation." *See Brown I* at 18. As a result, we need not accord any deference to the Commission in this regard. Notwithstanding the view of the Commission majority, we are obliged to review and resolve the statutory interpretation question ourselves. *Id*. (underscoring that "it is 'emphatically the province and duty of' our Court — not the FCC — 'to say what the law is'" (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)))). And in a matter of pure statutory interpretation, the equities readily favor an award of mandamus relief and a prompt resolution of the Application.[2]

---

[2] In dissenting from this award of mandamus relief, our distinguished colleague repeats his mischaracterization of the Supreme Court's stay order as "embrac[ing] what the Supreme Court has long emphasized: the need to preserve settled understandings prior to an election, here, in the 'critical weeks leading up to the midterms.'" *See post* 25 (Wilkinson, J., dissenting) (quoting *Brown II* at 3). The dissent also rests on several other false premises, including the following: (1) that the Public Notice and its extension of the LUC to political parties constitute "settled understandings" of election law; (2) that our panel majority is to blame for the Commission's inaction on the Federal Candidates' Application for FCC Review, in that we have given "repeated signals that the FCC lacked authority to act"; and (3) that "we firmly rejected mandamus only a few weeks ago, and our conclusion ought to be still firmer now." *Id.* at 25-26. As the dissent would have it, the majority's "decision is chaotic with a capital C." *Id.* at 25 (citation modified).

Suffice to say that any "chaos" is the FCC's fault, not ours. The Media Bureau upset the status quo with the Public Notice's novel interpretation of the LUC requirement, the Commission then took no action for months on the Federal Candidates' pleas for urgent review, and still today the Commission continues to conjure one excuse after another for further delay. Meanwhile, we have never suggested that the Commission somehow lacks authority to act; rather, we have consistently faulted the Commission for its failure to act and its blatant flouting of its obligation to do so. We award mandamus relief today as the only means to finally move forward with meaningful and essential judicial review.

IV.

Pursuant to the foregoing, we hereby grant the Mandamus Petition and direct the Commission to resolve by 12:00 noon on Friday, October 9, 2026, the Federal Candidates' Application for FCC Review.

Entered at the direction of Judge King and Judge Wynn. Judge Wynn filed a concurring opinion. Judge Wilkinson filed a dissenting opinion.

FOR THE COURT

/s/ Nwamaka Anowi
Clerk

WYNN, J., concurring in the order granting mandamus:

When the question proves inconvenient, change it. That is the course our dissenting colleague takes today. The dissent asks whether we owe respect to the Supreme Court. Of course we do. But that proposition, beyond dispute, does not resolve the question before us. Respect for the judicial hierarchy does not release an administrative agency from its obligation to obey Congress.

The question is whether the Federal Communications Commission may withhold the decision necessary for judicial review while its disputed interpretation sets the terms of an election. Congress's command cannot depend upon an unelected agency's willingness to open the courthouse door. Yet that is the practical consequence of the dissent's position.

The blueprint is simple. The Commission's Media Bureau announces what a congressional statute means. Regulated parties must order their affairs accordingly. Those who object are told that they must first seek review by the full Commission. The Commission then delays its decision while the election approaches. And when the time for effective relief has nearly run, the expectations formed under the disputed interpretation become a reason to leave it undisturbed.

What was once too early to review has become too late to remedy. The agency need never establish that its reading of the statute is right. It need only wait until the statute's protection has lost its practical worth.

Congress did not create an administrative process in which the agency holds both the power to impose an interpretation and the power to prevent its timely examination. Today's writ requires the Commission to make the decision through which the controversy

may properly reach a reviewing court. It leaves the substance of that decision where Congress placed it: with the Commission in the first instance.

That distinction answers the dissent's principal objection. The Supreme Court stayed our earlier mandate and explained that the pending application likely deprived this court of statutory jurisdiction to review the challenged notice. That order binds us. We may not revive our earlier merits judgment under another name.

But requiring the Commission to decide the application does not evade the prerequisite the Supreme Court identified. It requires the Commission to fulfill it. The stay remains controlling. Any later request for judicial relief must satisfy the applicable jurisdictional and equitable requirements on its own terms. Nothing in today's writ prejudges those questions.

The dissent would turn a prerequisite to judicial review into a means of preventing review. A requirement that the Commission first act becomes a license for the Commission not to act. The Supreme Court's order warrants no such conclusion.

Congress imposed obligations on both sides of the administrative process. An aggrieved party must seek Commission review. The Commission, in turn, must pass upon the application. 47 U.S.C. § 155(c)(4). The agency cannot demand obedience to the first obligation while treating the second as a matter of indefinite convenience. The Administrative Procedure Act likewise requires an agency to conclude matters presented to it within a reasonable time. 5 U.S.C. § 555(b). These duties belong to the statutory scheme no less than the requirement of administrative review itself.

What constitutes a reasonable time must account for what time takes away. An election affords a finite opportunity to speak, to purchase advertising, and to answer an opponent. Once that opportunity passes, a decision may resolve the legal question and yet afford scant relief to those whose rights were at stake. The calendar is therefore no incidental feature of this dispute. Counting months tells us little unless we also consider what those months consume.

Our dissenting colleague emphasizes that the earlier proceedings complicated the Commission's position and that the agency has since opened an expedited comment period. Those circumstances deserve consideration. Agencies must have an adequate opportunity to deliberate, and courts should not mistake every intervening procedural step for evasion.

But a new round of procedure does not discharge the duty to decide. Activity and resolution are different things. The relevant inquiry concerns the proceeding as a whole: whether the Commission has had a reasonable opportunity to address the application, and whether a concrete deadline can preserve meaningful review while allowing the agency to complete its work. The statutory obligation cannot recede each time another procedural stage begins.

The dissent's concern for settled expectations also carries weight. Candidates and broadcasters must plan their conduct, and judicial intervention near an election may impose real costs. But those considerations cannot automatically place an administrative interpretation beyond the reach of the legislation it purports to administer.

Otherwise, delay becomes its own justification. The longer the agency's interpretation governs conduct, the more reliance it produces. The more reliance it

produces, the stronger the argument against examining it in time to provide effective relief. An interpretation thus acquires practical immunity through the very delay that shields it from review. Congress's enactment becomes subordinate to the expectations generated by the agency's disputed account of it.

The danger is structural. It requires no attribution of partisan motive, and it would be no less troubling if the candidates who benefited were different. An unelected agency should not possess the practical authority to determine the conditions of electoral competition while also controlling whether its interpretation can receive timely judicial scrutiny. The distribution of that power matters whatever its immediate political consequences.

We are accustomed to debating whether courts have intruded too far upon the legislative domain. Here we confront a different prospect: an agency escaping both legislative constraint and effective judicial review through its control of procedure. Congress supplies the governing text. The agency supplies an interpretation. And then the agency decides whether a court may examine that interpretation before its consequences have become irreversible.

That arrangement gives administrative delay a force Congress did not confer upon it.

The writ preserves the arrangement Congress did establish. The Commission must issue a disposition. It remains free to determine the substance of that disposition. A court may review it when the statutory conditions for review have been satisfied. The Supreme

Court's stay remains undisturbed, and the requirements governing any subsequent judicial relief remain fully applicable.

Each institution thus performs its assigned task. The Commission decides. The reviewing court acts within its jurisdiction. And Congress's command retains its force throughout. Procedural convenience cannot excuse any of us from that allocation of responsibility.

Because today's writ enforces the Commission's duty to decide while leaving the decision itself to the Commission, I concur.

WILKINSON, Circuit Judge, dissenting:

Litigants far and wide will be eager to purchase the majority's new board game: Make The Supreme Court Say It Twice. Once is enough for me, so I vote to deny the petition for a writ of mandamus.

The grant of a writ of mandamus is a direct affront to the Supreme Court's stay order in this case. That order embraced what the Supreme Court has long emphasized: the need to preserve settled understandings prior to an election, here, in the "critical weeks leading up the midterms." *National Republican Congressional Committee v. Brown*, No. 26A274, 609 U.S. __ (2026) (slip op. at 3). The majority has now ignored the Supreme Court's concern and unraveled its work. I respectfully dissent.

The timing of the majority's egregious intrusion into the nation's electoral process has made no difference to the majority at all. Its decision is "chaotic with a capital C." *In re Brown*, No. 26-2230 (4th Cir. Sept. 18, 2026) (Wilkinson, J., dissenting from order deferring proceedings) (slip op. at 3). After this court's earlier decision in this case, broadcasters began "rescinding favorable rates" for political advertising. *NRCC*, 609 U.S. __ (2026) (slip op. at 3). Presumably they have returned to their prior contractual agreements after the Supreme Court's stay. The downstream effects of this writ may force them to flip again. Neither parties nor candidates nor broadcasters have any idea how to plan, contractually or otherwise, for the rest of the election season. Any unlawful expenses incurred "cannot be remedied after the fact through refunds or reimbursements." *Id.* at 4. Who can tally the intangible damage of election seasons thrown into limbo?

The timeline of this litigation demonstrates why mandamus is uniquely inappropriate. First, this is more a case of judicial meddling than agency neglect. We have inexcusably absolved ourselves of any responsibility for the FCC's delay, notwithstanding our repeated signals that the FCC lacked authority to act. Second, we firmly rejected mandamus only a few weeks ago, and our conclusion ought to be still firmer now.

The record makes all this embarrassingly plain. On April 29, 2026, petitioners filed an Application for Review with the FCC challenging the agency's guidance on LUC rates, which are lower-cost rates for political advertisements. Less than two months later, petitioners asked this court to intervene. The FCC objected that we lacked jurisdiction until the agency disposed of petitioners' application. This court expedited the proceedings, signaling that it was about to take jurisdiction away from the FCC, and it finally did so on August 25.

The majority concluded it was unnecessary for the FCC to dispose of petitioners' application in the first place; the FCC had already "constructively denied" it. *Brown v. FCC*, No. 26-1785, 2026 WL 2493115, at *4 (4th Cir. Aug. 25, 2026). The Supreme Court disagreed. On September 4, the Court stayed the Fourth Circuit's mandate and noted that our court lacked jurisdiction to disrupt campaign finance ground rules in this way "in the critical weeks leading up to the midterms." *NRCC*, slip op. at 3.

So, as of September 4, we had first signaled our intent to deprive the FCC of jurisdiction, and then actually done so, triggering Supreme Court correction. To blame the FCC for inaction after we had signaled its inability to act is an indefensible basis for invoking what all agree is an extraordinary writ even in the face of far greater delays and

far more egregious circumstances. *See Brown*, 2026 WL 2493115, at *20 (Wilkinson, J., dissenting). And the majority cites no cases it claims are analogous to this one. *See* Maj. Op. at 15–18. It thus uses a writ of mandamus more aggressively, to my knowledge, than has ever yet been attempted.

Has the further delay between September 4 and today been such a "clear and indisputable" violation of a duty to act, *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988), that it is proper for a court to issue the writ? *See In re Core Communications*, 531 F.3d 849, 850 (D.C. Cir. 2008). Impossible. With doubts about its jurisdiction resolved by the Supreme Court, the FCC went to work. On September 15, it opened and expedited its comment period on the application for review. The majority deferred consideration of this mandamus petition until after those comments were complete, tacitly endorsing the comment period—an appropriate measure, since the majority complained, in its earlier opinion, that the FCC had not yet called for comments. *See Brown,* 2026 WL 2493115, at *6.

But following instructions did the FCC no good, either. Still oblivious to its own meddlesome effect on these proceedings, the majority now holds that the FCC was so neglectful of its duty to dispose of petitioners' application that the situation warrants the "extraordinary" remedy of a writ of mandamus. *Gulfstream Aerospace Corp.*, 485 U.S. at 289. The FCC's only "extraordinary" demerit is a lack of mind-reading talent. It is to be punished for sloth when it supposedly lacked jurisdiction, and then condemned for industry when it obeyed our instructions.

How could mandamus possibly fix this mess? One of my colleagues had the answer back in August, remarking that it "elude[d] him" how "mandamus could be a solution . . . in the months before an election." *Brown,* 2026 WL 2493115, at *13 n.1 (Wynn, J., concurring). If mandamus was so obviously inappropriate in August, it cannot possibly be needed well into October. It is bad enough to unsettle long-planned advertising contracts right before the LUC rates begin, as we did earlier, to the Supreme Court's displeasure. It is still worse to tinker with LUC contracts *after* they go into effect.

That tinkering is doubly disrespectful—an affront both to the Supreme Court and to the FCC. The Supreme Court issued its order on September 4, the day LUC rates began, to create a predictable, uniform LUC rule for this year's elections. We expedited our own (mistaken) earlier holding for the same reason. Now, it seems, our prior solicitude for stable rules has evaporated as swiftly as our respect for the Supreme Court. The majority further assigns the FCC no more than a ministerial role. It demands at gunpoint an agency decision which will allow the majority to reach the merits and recapitulate its own earlier conclusions, disrupting settled campaign finance rules in the hot breath of an impending election.

Once again, the issuance of a writ of mandamus palpably disregards the Supreme Court's stay order. The majority's action will reverberate well beyond the specifics of this case. Why set an example of cavalier disregard for the edicts of a higher court? We are better than that. We would make short work of a district court that approached our own orders the way the majority treats the Supreme Court's guidance. The judicial system

depends upon the demonstration of some modicum of respect by lower courts to higher ones. That respect is all too sadly absent in this action.